FILED
SUPERIOR COURT
OF GUAM

2022 FEB 14 PM 6:01

CLERK OF COURT

By:_____

IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| PEOPLE OF GUAM, | ) | CRIMINAL CASE NO. CF0381-21 |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | DECISION AND ORDER GRANTING |
| JOHN RICHARD BORDALLO BELL, | ) | PEOPLE'S EX PARTE MOTION TO |
| DOB: 06/30/1976 | ) | REVOKE DEFENDANT'S |
| | ) | PRE-TRIAL RELEASE |
| Defendant. | ) | |
| | ) | |
| | ) | |

## I.    INTRODUCTION

This matter is before the Honorable Maria T. Cenzon on the People of Guam's Ex Parte Application and Motion to Revoke Defendant's Pretrial Release (the "Motion"), filed on October 28, 2021. Defendant John Richard Bordallo Bell ("Defendant" or "Bell"), represented by Attorney William Gavras, filed Defendant's Memorandum RE: 3d Violation Report and Opposition to the People's Motion to Revoke Defendant's Pretrial Release (the "Opposition") on November 10, 2021.

The Court held several hearings relating to the Defendant's numerous Violation reports and, on November 15, 2021, following notice to the Defendant and the People, the parties came before it for hearing on the People's Motion as well as for a continued hearing on Defendant's Answering to the 3rd and 5th violations, more fully discussed herein.

At the noticed hearing on November 15, 2021, the People were represented by Assisant Attorney General Alysa Draper Dehart. Defendant was present *in person* together with his counsel of record, Attorney Gavras. Several witnesses testified during the revocation hearing, including one of the Defendant's alleged victims. Following the hearing on the Motion, the court took the matter under advisement pursuant to Supreme Court of Guam Administrative Rule 06-001 and CVR 7.l(e)(6)(A) of the Local Rules of the Superior Court of Guam. Having duly considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order GRANTING the People's Motion.

## II.    DISCUSSION

### A.    Indictment and Relevant Conditions of Release.

On August 17, 2021, Defendant was charged by a Grand Jury with Three (3) counts of Terrorizing (As a Third Degree Felony); Three (3) counts of Felonious Restraint (As a 3rd Degree Felony); Assault (As a Misdemeanor) and Two (2) counts of Assault (As a Midemeanor). *Indictment* (Aug. 17, 2021). He appeared before Magistrate Judge Bejamin Sison ("Magistrate Sison") who issued conditions of release which would govern Defendant's behavior while on pre-trial release. Order of Conditional Release and Appearance Bond ("OCR")(Aug. 2, 2021).

The conditions of release which are the subject of the several violations filed by Probation Services Divison, include:

> ¶3.    **OBEY ALL LAWS**: DEFENDANT SHALL OBEY ALL FEDERAL AND LOCAL LAWS, AND ABIDE BY ALL REASONABLE TERMS SET OUT BY PRETRIAL SERVICES WHILE ON RELEASE. DEFENDANT SHALL REPORT TO PRETRAIL SERICES IN THE PROBATION OFFICE IN PERSON BEFORE 10:00 AM ON THE NEXT WORK DAY FOLLOWING THEIR RELEASE FROM CUSTODY.

**¶ 4. THE DEFENDANT MUST INFORM THE COURT OR THE PRETRIAL SERVICES IN THE PROBATION OFFICE OR SUPERVISING OFFICER IN WRITING BEFORE MAKING ANY CHANGES TO RESIDENCE OR TELEPHONE NUMBER.** The Defendant SHALL reside at the following address: _____. The Defendant's telephone number is as follows: _____.

**¶ 6. NO CONTACT/STAY AWAY:** Defendant is ordered to stay away from, and have no contact with the victim(s), either in person, through a third party, by telephone or letter, email, text or any electronic devices; including any specified witness as follows: J.L.S., A.D.A., K.T. Defendant shall stay away from the victim(s), his.her/their residence, swelling, place of employment, school, day care center, establishment, or any family or social function. Upon becoming aware of the victim's presence, or planned presence, Defendant is ordered to immediately leave the function, or establishment.

**¶ 7. NO THREATS/ASAULT/HARASSMENT:** Defendant is restrained from threatening to commit or committing acts of violence against, or from harassing, annoying, or molesting the victim(s), or other family household members, or any person named in the complaint or indictment or in this order.

**¶ 9. HOUSE ARREST:** Defendant is under House Arrests and may not leave the above residence except for court appearances, to meet with defense counsel or Pretrial Services at the Probation Office, to attend religios servies, for emergeny medical treatment, employment or _____.

**¶ 10. CURFEW:** Defendant shall obey the following curfew: _____ _____.

Neither Paragraph 4 nor Paragraph 10 of the OCR was checked by Magistrate Sison as a condition of Defendant's release. Defendant argues that the Magistrate Judge's failure to check Paragraphs 4 and 10 justify his acts relating to leaving his home for employment purposes. The Court disagreed.

**B.       The Question of Defendant's Competency and Legal Representation.**

In addition to restricting Defendant's conduct while on pre-trial release, Magistrate Sison ordered, apparently on the request of Defendant or his then-counsel Attorney Michael Phillips, that he be placed on a 72 hour hold and undergo a "mental health evaluation" by the

Guam Behavioral Health and Wellness Center ("GBHWC"). *Id.* at ¶ 15; *Magistrate's Hearing of 8/2/21* at 12:03:19 PM (Aug. 2, 2021). At no time did Defendant place his mental state as issue in the context of negating or mitigating culpability for any of the criminal charges against him, pursuant to 9 GCA §§ 7.16 ("Defense: Mental Disease or Defect") or 7.22 ("Same: Procedure for Assertion Of."). Moreover, on August 30, 2021, the Defendant, represented at the time by Attorney Phillips, clarified that the issue of competency was only as to Defendant's danger to himself or to others.

During that Return of Warrant hearing, the Court inquired and the Defendant confirmed through his own statements and that of his then-counsel Attorney Phillips, that he did not place his mental state at issue and further insisted that he is competent to answer to the violations despite representing himself *pro se. Return of Warrant Hrg. on 8/30/2021* at 4:06:44 PM to 4:20:00 PM (Aug. 30, 2021). During a later hearing, Mr. James Smits of GBHWC was present and confirmed that the Defendant received an assessment from GBHWC, but that there was no finding that the Defendant was a danger to himself or to others. *Violation Hearing: Violations 1 – 5 on 9/8/21* at 11:02:13 AM to 11:13:43 AM (Sep. 8, 2021). Defendant also confirmed that two psychiatrists did not find that he was a danger to himself or to others, nor suffering from any psychosis. *Id.* at 11:13:58 AM. Following the testimony of Mr. Smits and the Defendant, the Court found the Defendant competent to represent himself during the violation hearing and to answer to the pending violations. *Id.* at 11:19:20 AM to 11:20:44 AM.

With respect to legal representation, the Defendant first appeared at his magistrate hearing with Attorney Phillips. Thereafter, the Defendant terminated Mr. Phillips from representing him in these criminal proceedings, but stated that he did not wish to represent himself at trial. *Return of Warrant Hearing* (Aug. 30, 2021). Defendant then requested that the

Court appoint him a Public Defender. *Id.* During the August 30, 2021, hearing, however, the Court had determined, on the basis of Defendant's answers, that the Defendant does not qualify for indigent legal services because of his assets and income which are well in excess of the eligibility guidelines to qualify for free legal services. *Id.* at 3:47:46 PM. On September 8, 2021, the Defendant insisted that he wanted to proceed with answering Violations 1 through 5; however, the proceedings had already taken almost two and a half hours on September 8, leaving the answering for the Third and Fifth Violations remaining. On October 15, 2021, at the continued hearing on the Answering for the Third and Fifth Violations, Attorney Gavras entered his appearance on behalf of the Defendant. He continues to represent the Defendant as his counsel of record.

### C. Five Violations are filed against the Defendant.

Between his release on or about August 4 and August 24, 2021, the Defendant incurred five (5) violations of his pre-trial release conditions, as follows:[1]

1. **<u>Violation (filed August 11, 2021 and addressed on September 8, 2021)</u>**: *The Court found a violation*. A Violation was filed for Defendant's failure to abide by House Arrest provisions set forth in Paragraph 9 of the OCR issued by Magistrate Sison. On August 10, 2021, Probation received information from Senior Probation Officer Rene B. Balbin that the Defendant was at Kmart on August 10, 2021 at 9:29 PM. During a violation hearing on September 8, 2021, Defendant admitted that he was at Kmart at 9:29 PM, but argued that it was for the purpose of work-related shopping, including to obtain a cellular phone. The

---

[1] During a hearing on the Return of Warrant, the Defendant argued that the violations were only filed because the Probation Officer or Probation Services Division is not used to supervising attorneys. However,

Court did not accept the Defendant's explanation that he needed to be at Kmart for employment purposes at 9:29 PM and determined that Defendant violated the provisions of Paragraph 9 of the OCR. *Violation Hrg. of Sept. 8, 2021 (Violations 1-5)* at (Sept. 8, 2021). There was no reason why the Defendant could not accomplish the same task during normal working hours. Cellphone and internet service providers are typically open from 8 am to 5 p.m. or even later if they are located at a mall or shopping center. Defendant knew he was in violation of his pre-trial release conditions by going to Kmart at almost 10 p.m. for the reasons he stated during the hearing.

2. **Second Violation (filed August 16, 2021 and addressed on September 8, 2021)**: *The Court found a violation*. A Second Violation was filed on August 16, 2021, for Defendant's failure to again abide by House Arrest provisions set forth in Paragraph 9 of the OCR. On August 12, 2021, Defendant reported on a local radio program that he had stayed at the Days Inn Hotel sometime after his release. During the September 8, 2021, Violation Hearing, *supra,* Defendant argued that the OCR does not require him to inform probation prior to changing his residential address or telephone, so he moved to Days Inn because of internet issues as well as claims of someone hacking into his computer/internet. *Hrg. of 9/8/21 at 1:34:53 AM.* The Court found that there was a violation. Defendant argued that "house arrest conditions cannot be read in isolation" and because Magistrate Sison did not check Paragraphs 4 or 10, he was not required to inform Probation when he moved to Days Inn without notifying Probation. *Id. at 11:35.* However, this argument fails because, while Defendant

acknowledges that House Arrest conditions cannot be read in isolation, Defendant indicated that he would reside in 157 Veronica Way, Tamuning, Guam. *OCR at Acknowlegement, p. 2.* Thus, the entire OCR and agreement must be taken into consideration. Defendant acknowledged on page 2 of the OCR that a violation, including failing to reside in the home as indicated, subjects him to contempt order and that he may be arrested.

Additionally, there is no curfew provision under Paragraph 10 checked because House Arrest is ordered to the exclusion of its less restrictive provision, curfew. This obviously means that Defendant must remain at home with the exception of the specific permitted reasons set forth in Paragraph 9. Moreover, Probation Officer I Kiana Terlaje counseled Defendant that leaving the home to shop at Kmart after regular business hours is considered to be a violation by Probation. Moreover, she counseled him that living other than in his residence was also a violation. However, Defendant disregarded Officer Terlaje's admonishments, which is clearly a violation of Paragraph 3 of the OCR requiring Defendant to "abide by all reasonable terms set out by pretrial services while on release." Defendant's argument that the House Arrest provisions cannot be read in isolation is absolutely correct; however, the most obvious reason that he cannot relocate himself without informing probation (notwithstanding that the box for Paragraph 4 was not checked), is because Probation cannot do a home visit to

monitor compliance with the house arrest provisions if he is not living at the residence provided in the OCR.[2]

3. **Third Violation (filed August 23, 2021 and addressed on November 15, 2021)**: The Third Violation was filed for Defendant's failure to comply with the provisions of Paragraph 7 of the OCR, specifically Defendant harassed the victims "when he posted a Facebook comment regarding them and posed screenshopts of a private conversation between Defendant and the alleged victims. Victim K.T. testified that these acts of the Defendant made her feel "harassed." Hrg. Oct. 15, 2021 at 2:53:13 PM; *Hrg. on Mot. for Revocation of Pre-trial Release* at 2:55:48 to 3:11:16 PM (Nov. 15, 2021). Counsel for Defendant argued that such postings were intended to "proclaim his innocence and call into question the veracity of his accusers" and that such statements are protected speech under the First Amendent. See, *Def.'s Mem. Re: 3d Violation Report and Opp. To People's Mot. to Revoke Def's Pretrial Release* at p. 7. However, Defendant fails to cite any case authority in support of his arguments, and moreover that the cases cited in support of his First Amendment arguments are inapposite. The Court, therefore, finds a violation of the "no harassing, annoying, or molesting" provisions of the OCR.

---

[2] Defendant also argued that because he was not subjected to a "curfew", him shopping at Kmart or going to Days Inn "for employment purposes" outside of regular business hours was not a violation. This argument is unpersuasive because curfew is a less restrictive condition of pre-trial release than house arrest. A defendant who is on pre-trial release and whose hours of employment are graveyard shift, for example, would be restricted to his or her home during what others might believe are normal working hours (e.g., 8 to 5 or 9 to 6). He would not be free to wander to various places outside of his employment hours even if the "curfew" box was not checked.

4. **Fourth Violation (filed on August 23, 2021 and addressed on September 8, 2021)**: *The Court found a violation*. Similar to the First and Second Violations, Defendant failed to abide by House Arrest provisions be conducting personal business on August 10, 11, 19, 21 and 23, including purchasing a motorcycle and going to various financial institutions for non-work related activities. The Court found that he had violated the spirit as well as the technical prohibitions of the OCR. *Hrg. of 9/8/21.*

5. **Fifth Violation (filed on August 24, 2021 and addressed on November 15, 2021)**: *The Court found a violation.* The Fifth Violation was filed against the Defendant for failing to refrain from ingesting/consuming illegal controlled substances. On September 21, 2021, an Informational Report was filed by Probation indicating that the sample was returned from off-island testing and was positive for methamphetamines and amphetamines in violation of Paragraph 12 of the OCRs. Defendant *admitted* to this Violation of his pre-trial release conditions, specifically, Defendant failed to refrain from ingesting/consuming any illegal controlled substances. *Hrg. on October 15, 2021 at 2:52:30 PM.*

For these violations, the Court has the authority to revoke the Defendant's pre-trial release. However, the Court reserved it's ruling on the People's Ex Parte Motion to Revoke following the determination of a violation on the Third Violation for harassing the named victims.

//

//

**D.   Revocation of Defendant's Pre-trial Release for Five Violations is Warranted.**

The Defendant has willfully and openly defied each and every provision of the OCR which would allow this Court, through Probation, to meaningfully monitor his behavior and to ensure that he refrains from harassing, annoying or molesting his alleged victims. Moreover, his acts have challenged the authority of the Probation Officer to supervise his compliance with Court orders. The Defendant repeatedly uses his "employment" as an excuse to disobey the court's orders regarding his residence and his late night trips to Kmart or his visit to financial institutions to buy a motorcycle for his personal use. None of these are consistent with the Magistrate's OCR, and to argue, as an officer of the court, that this behavior is consistent with someone who is operating his law office and also arguing that a probation officer does not understand how to supervise an attorney on pre-trial release is simply absurd.

According to 8 GCA § 40.75, "where the court finds that [a defendant] has willfully violated the conditions imposed on his release ... the court *may* revoke the [defendant's] release." *People v. Manibusan,* 2016 Guam 40 (quoting 8 GCA § 40.75(b)). The Court finds that Defendant has repeatedly, and without justification, violated the conditions of his release as set forth in the OCR issued by Magistrate Sison. Moreover, the assigned Probation Officer constantly warned the Defendant that his actions constituted a violation of pretrial release conditions; however, the Defendant wholly disregarded her admonishments under the pretense that the officer simply did not know how to supervise a practicing attorney on house arrest with employment exceptions. This behavior disregards Paragraph 3 of the OCR requiring the Defendant to abide by the reasonable terms set out by pretrial services.

During the September 8, 2021 Violation Hearing, Defendant argued that he "explained" to Officer Terlaje that he was leaving his residence for "employment purposes" late at night in order to resolve a hacked cell phone, and for other purposes, stating that: "I've been telling probation...I've repeatedly walked my probation officer through all of this [referring to his late night departures from his home-office]." *Violation Hearing of Sept. 8, 2021* at 11:40:16 AM. The Court finds that the Defendant's attitude towards Probation Officer Terlaje was inexplicably dismissive, and further that the Defendant completely disregarded her attempts to obtain compliance with the requirements of the conditions of the OCR relating to the house arrest provisions. *Id.* at 12:39:07 PM. During her testimony, Officer Terlaje testified that Defendant never indicated that he specifically needed to fix his cell phone or the other specific reasons why he was leaving his home-office after normal and usual business hours. Instead, Defendant stated on the record that he continued to argue with Officer Terlaje about whether he was violating release conditions because believed that the "contractual terms of this agreement [the OCR] made it so clear that I'm *not* violating the orders despite the plain terms of the restrictions." *Id.* at 11:42:27. The Court disagrees with the Defendant.

At the time of the issuance of the OCR by Magistrate Judge Sison, the Defendant was a practicing attorney.[3] He claimed that he was leaving his home/office at all hours of the day for "employment purposes." He stated that he found the conditions of the OCRs clear and unambiguous. *Id.* at 12:54:17 PM. Despite acknowledging the unambiguity, the Defendant chose to argue with the Probation Officer, who is an arm of the court and charged in part with enforcing the pre-trial release provisions, rather than to seek clarification from the Court, or

---

[3] During the several hearing on the Violations 1-5, Defendant informed that Court that the Guam Supreme Court issued an Interim Order of Suspension for alleged violations of the Guam Rules of Professional Conduct. Interim Suspension Order, Guam Supreme Court Case No. ADC21-004 (Aug. 13, 2021).

from the Magistrate who issued the order. The Defendant has practiced law in this jurisdiction for 8 years and has the benefit of legal training, such that he had both the means and opportunity to seek clarification from the Court rather than defy the instructions of the Probation Officer on a misplaced reliance that the Court would agree that leaving a home office at all times of the day under the claim of "employment purposes" was appropriate. The Court disagrees with the Defendant. It was not appropriate. *Id.*

Moreover, as stated previously, the unambiguous provisions of the OCRs compels the Defendant to "abide by all reasonable terms set out by pretrial services while on release." OCR at ¶ 3. It is not onerous to require the Defendant to inform probation when he would be leaving his home, identified as "157 Veronica Way, Tamuning Guam" after normal business hours. Even if he left the residence and went to Days Inn "for employment purposes," he also temporarily resided at that location without seeking approval from either the Probation Services Division nor this Court. 12:58:01 PM to 1:00:29, 1:04:03 PM. The Court, at the September 8, 2021 Violation Hearing, found violations of the House Arrest provisions of the OCRs, as set forth in Violations 1, 2 and 4. Defendant admitted to the violation in the Fifth Violation of failing to refrain from using illegal controlled substances.

As set forth, above, the Court finds that Defendant also failed to refrain from harassing, annoying or molesting his Victims. The Defendant's public statements about his alleged victims for the purpose of, as he stated on the record, defending himself and calling into question the veracity of the victims' statements, constitute defamatory language which is not protected under the First Amendment, as the Defendant contends. See, *TT v. KL*, 965 N.W. 2d 101, 117 ("a defamatory communication is a communication that tends to harm a person's reputation, thereby lowering the person in the estimation of the community or deterring others from dealing

or associating with them."). The Defendant is a licensed attorney with over eight (8) years of experience. Trying the veracity of alleged victims of a criminal offense with which you have been charged in a public forum, rather than in a court of law (which the defendant himself is entitled to), is neither proper nor protected speech; therefore, such statements could only be intended to have harassed, annoyed or molested the victims, in violation of Paragraph 7 of the OCR.

Although the court held in abeyance the determination of sanctions for such violations, pending the answering to the outstanding violations, the Court finds that, due to the five violations committed by the Defendant within a one month period and despite repeated counseling and admonishment from his assigned probation officer, revocation is appropriate under the circumstances.

Title 9 GCA § 80.68(a) states that: "The court shall not revoke a suspension or probation or increase the requirements imposed thereby on the offender except after a hearing upon written notice to the offender of the grounds on which such action is proposed. The offender shall have the right to hear and controvert the evidence against him, to offer evidence in his defense and to be represented by counsel. 9 GCA § 80.68(a) (2005) (emphasis added). Title 9 GCA § 80.68(a) is a verbatim adoption of Model Penal Code ("MPC") § 301.4, based upon its adoption by other states. 9 GCA § 80.68(a), SOURCE; see also N.J. Stat. Ann. § 2C:45-4 (West). Compare 9 GCA § 80.68(a), with MPC § 301.4. *People v. Ongiil,* 2016 Guam 34 ¶ 46. Because the Defendant has had notice and an opportunity to respond to the People's Ex Parte Motion for Revocation, the Court finds that revocation of Defendant's pre-trial release is warranted and supported by law in this case.

## III. CONCLUSION

For the reasons stated above, the Court hereby REVOKES the Defendant's pre-trial release on his own recognizance in the above-captioned matter. Bail was previously set by the Magistrate Judge at $50,000.00. Upon posting such bond or security, the Defendant may be brought before this Court for consideration of appropriate conditions of release.

Trial Dates shall follow under separate cover.

SO ORDERED this 14th day of February, 2022.

_____
HONORABLE MARIA T. CENZON
Judge, Superior Court of Guam